## VAUGHT vs. WELLBORN.

1. In a suit at law on a note given for the purchase money of slaves sold and delivered to the defendant, damages in respect to them, resulting from the tortious act of the vendor's wife committed in his absence, cannot be allowed as a discount or set off, it not appearing that the husband consented to the tort. or gave it his subsequent sanction.

2. A wife, without the privity of her husband, has no power to rescind his contracts.

Error to the Circuit Court of Madison. Tried before the Hon. Daniel Coleman.

THIS was an action of debt instituted by the plaintiff against
29

the defendant in error on a note for $3000, made payable to one James B. Vaught, and by him assigned to the plaintiff. The facts of the case are sufficiently noticed in the opinion of the court.

ROBINSON, for plaintiff in error:

1. If the payee were suing on this bond, the proof by Paris would not sustain either the plea of payment, fraud, want of consideration or failure of consideration. Wellborn obtained a complete title and possession under it, and retained that possession two years. And so having and retaining it, his right was good against the whole world. Being so, it cannot be truly said that he has been deprived of that right by the wrongful act of any person whatever. And whenever the act complained of gives him a clear remedy by action against the wrong-doer, he must resort to that remedy, and cannot rely upon it under either of the pleas.

2. This proof is not admissible under the plea of set-off, because, 1st.—If it be a good claim at all, it is for unliquidated damages. 1 Chitty's Pl. 571; 2 Sand. Pl. & Ev. 790, and the cases there cited. 2d—Setts-off to be good, should be of mutual debts and in the same right. Van Pheel & McGill v. Connally & Andrews, 9 Porter 452. Suppose the proof to show that Vaught's wife had possession and that defendant had a right to recover damages of James B. Vaught. Could these damages be relied upon under this plea? This right to damages could only be enforced by an action against J. B. Vaught and wife. In such case the action must be for the tort either by trover, detinue or trespass. In either case the action is founded upon the tort of the wife. 1 Dunlap's Prac. 20, 21; 1 Chitty's Pl. 92, 93, 121; 2 Comyn's Digest, 235; 2 Saunders Pl. & Ev. 572. In trespass, the gist of the action is the wrongful taking: in detinue and trover, the gist of the action is the wrongful detainer.—1 Sand. Pl. & Ev. 434. From which it appears that for all torts of the wife during the marriage, the action must be against the husband and wife—then if it must be against husband and wife, the right to recover these damages cannot be set-off against the plaintiff's demand. For, where an action is brought for the tort of the wife, and the wife die before judgment, the suit would abate

as to the husband.—1 Chitty's Pl. 92, 93. This consideration brings this case precisely within the case in 9 Porter, cited above.

PARSONS & CLAY, for defendant:

1. The note in this suit mentioned was assigned, but the defence is good nevertheless. In such cases the defendant is to be allowed the benefit of all the payments, discounts and set-offs existing before notice. Clay's Dig. 381, § 6.

2. Was not the evidence in this case good, under the pleas of failure of consideration? In every sale of personal property there is an implied warranty of title. Cozzens v. Whitaker, 3 Stew. & Porter, 322. And this, we think, includes an obligation on the part of the vendor, that *he* will do no act to defeat the sale. If a man deprives himself of the power to perform his covenant, that is a breach of it. 2 Bacon's Ab. Title, Cov. 592, (new edit.) As it will be a breach of the vendor's warranty for himself to dispossess the vendee of the thing sold, we contend that the same result follows, if the vendor's wife dispossess the vendee; and this, not only on the ground of his general liability for her acts, but because the action of detinue, for her acts in this case, would lie against him alone without joining her. 1 Chitty's Pl. 84; Bacon's Ab. Title, Detinue, and note g. The husband is liable for all the *torts* and trespasses of the wife during the coverture. 1 Bacon's Ab. 503, L. If goods came to a *feme covert* by *trover*, the action may be brought by husband and wife, but the *conversion* must be laid only in the husband: Ib.; Coke Litt. 351, b.; 2 Kent's Com. 149 : husband held liable for a *conversion* by his *wife*, though they were *parted*. Bacon's Ab. 487, g; Vern. 143. Husband may be sued *alone* for a conversion by the wife after (during) marriage—if sued for a joint coversion, the declaration should charge *conversion to the use of the husband*, not of both. Estill v. Fort, 2 Dana, 238; 1 Wheaton's Sel. 296. This warranty was, of course, at the time of the sale. It was before the note was assigned. It provides against its own breach, and secures a remedy, from the time it was made, against its own subsequent violation. The right or indemnity secured by the warranty, is anterior to the assignment of the note. For this reason it may be made a defence against the

Vaught v. Wellborn.

note, although assigned. As the vendor is individually liable in detinue for the conversion of his wife, the vendee may rely on this as a failure of consideration to avoid circuity of action. The failure of consideration is a good defence. Gee, adm'r v. Nicholson, 2 Stew. 512. To a note given for a ferry, where the ferry was afterwards recovered from the purchaser, the plea of failure of consideration is good. Evans v. Mitchell, 1 Stew. & Porter, 226.

3. Whenever defendant may maintain a cross action for damages, on account of a defect in personal property purchased by him, or for non-compliance by plaintiff with his part of the contract, the defendant, in an action against him on the note for the purchase money, may claim a deduction corresponding with his injury—1 Stewart & Porter 71. This doctrine is affirmed as to personal property,—1 Ala. Rep. 647–'49: and again asserted as to personal property in Cullum v. Br. Bank at Mobile, 4 Ala. Rep. The doubt expressed in Wilson v. Jordan, 3 Stew. & Por. 72, as to the case in 1 Stew. & Por. 71, is overruled by the two cases last cited. Plaintiff's note in the hands of defendant in right of his wife, although payable to a third person, is available by defendant as a set-off, if there was a promise by plaintiff to pay it to defendant. French v. Garner, 6 Porter, 549, 640. In the present case, the indorsee, who is an endorsee without consideration, admitted enough in regard to this note, to enable the defendant to rely on his defence.

4. But there is another view in which this defence is good. There are many cases to show that a purchaser has an election whether to rescind or to insist on his purchase, as in the case of his discovering a fraud in the sale. In such cases the purchaser may alone rescind the contract. But both parties may rescind any contract. The plaintiff's wife, for whom he is individually responsible, did rescind the contract on her part, and the defendant on his part rescinded it by insisting on this defence, which makes a case of failure of consideration.

CHILTON, J.—The sole question for our consideration is, whether the Circuit Court properly admitted so much of the deposition of Elizabeth Paris, to be read to the jury, as

shows that Catharine Vaught, the wife of James B. Vaught, pointed out the two slaves given in part consideration of the note sued on, to the soldiers under the command of Gen. Scott, and required them to take possession of them. The solution of this question must depend on the legal effect of the evidence which was admitted.

The proof shows that James B. Vaught was the owner of three slaves, besides others, which he acquired in right of his wife Catharine, from the estate of her father, the same having been duly delivered to him by the personal representative of the estate : That he sold the said three slaves to the defendant and received the note sued on, a portion of which has been paid and credited upon said note, the name of said James being first signed to said credit, but afterwards stricken out, and the name of the present plaintiff inserted. The slaves were delivered to the defendant, who kept them for some time, and being informed by the vendor that he had better remove them out of the Cherokee Nation, as he might have some difficulty in regard to them when the Government should remove the Indians, he refused to do so. It was also shown in evidence, that said Catharine, who belonged to the Cherokee tribe of Indians, and the said James B. Vaught, lived unhappily together, and before the emigration of the tribe by the Government to Arkansas, had separated. During the preparation for the removal of said Indians, and when the said James B., and wife were living separate (he residing in the State of Tennessee, studying medicine,) the said Catharine went with the witness, whose deposition was objected to, and pointed out two of the slaves which had been sold by her husband, and claiming them as her property, induced the soldiers to take charge of them. The note given, as before stated, in consideration of the three slaves, had been previously assigned, but whether the defendant had any notice of the assignment before the slaves were so seized, does not appear by the record.

According to our statute, the defendant is entitled " to the benefit of all payments, discounts and sets-off, made, had or possessed against said note, previous to notice of the assignment"—Clay's Digest, 383, § 6. Keeping in view this statute, let us enquire as to the character of the defence. It is clear

that the property in the slaves vested by the sale in the defendant, and the contract, so far as James B. Vaught was concerned, was complete—neither is there any question raised between the parties, as to the right of the soldiers, or Mrs. Vaught, to seize upon the two slaves; but it is conceded that the act was unauthorised and tortious. The question then as to the admissibility of the deposition of Elizabeth Paris, resolves itself into this: Is the trespass or tortious act of the wife, in which the husband did not in any way participate, such a discount or set-off, as under the statute above refered to, may be made available to the defendant when sued by the assignee of the note?

The seizure of the two slaves by the soldiers was a matter wholly disconnected with the contract of sale, which had long before that time been fully executed by the vendor. The original sale cannot therefore be affected by it, upon the idea of a failure or partial failure of consideration. As to allowing the proof, as showing a demand existing in favor of the defendant against James B. Vaught for the tortious act or trespass of his wife, we are aware of no principle of law which would tolerate it. In the first place, the damages which the defendant sustained by the trespass are unliquidated, and must be ascertained by the jury before they can be made certain. McCord v. Williams & Love, 2 Ala. Rep. 71; Sherman v. Ballow, 8 Con. Rep. 304. But conceding this to be no objection, then another principle, which is well settled, comes up to exclude it, which is, that the demand must be due from the plaintiff to the defendant—6 Cow. 261; 9 Porter's Rep. 452, that is, the defendant can not set-off a joint liability against his separate liability. Now allowing the defendant the benefit of all defences he could render available as against James B. Vaught, were he instead of William Vaught the plaintiff, we think it very clear, that the demand which the defendant claimed, as predicated upon the seizure of the two slaves, was not one which he could assert as against James B. Vaught alone, but that in such suit the wife, Catharine Vaught, would be an indispensable party. It is said, if goods come into the possession of husband and wife during coverture, he may be sued alone in detinue for the detention, 3 B. & Ald. 685–689; Com. Dig. Tit, Baron & Feme, Y. Brown

on Actions ta Law, 249; but in this case they have never come
to the husband's possession. The general rule is, that for all
torts committed by the wife alone, in person, the husband and
wife must both be sued. Bacon's Ab. Baron & Feme, L.;
Brown on Action, 249; 35 Law Lib. (3 series) 182; so the
action must be brought against both, if the wife entice away,
or harbor a servant. See authority last cited; 1 McCord, 578.
Mr. Chitty says, that for torts committed by the wife *during*
coverture, the husband and wife must be jointly sued; but if
goods be delivered to *husband and wife* during coverture, det-
inue lies only against the husband.—1 Chitty's Pl. 92–3. So
it has been held that in action for the tort of the wife, commit-
ted without her husband, the plaintiff cannot unite in the same
declaration a tort committed by the husband alone: ib. 2 Wils.
227. The bill of exceptions sets out all the proof on both
sides, and from it, it does not appear that the negroes ever
came to the possession of either husband or wife, since the
wife "handed them over" to the soldiers in her husband's ab-
sence, as shown by the deposition of Paris. The wife has
lived apart from her husband from a period anterior to the
trespass—she emigrated with her tribe to Arkansas, and he,
living with another woman, removed to Texas. The negroes
were in possession of the soldiers under command of Gen.
Scott, and were demanded *of the latter by the defendant,* who
refused to give them up, and here the proof leaves them. Now
we have been unable to find any adjudicated case, or any le-
gal analogy furnishing a warrant for holding, that the tortious
act of the wife under the circumstances of this case, can create
such a charge against the husband as will constitute a set-off
or discount in favor of his vendee when sued in an action at
law upon the note given for said slaves. The learned coun-
sel have refered us to the case of Estill and wife v. Fort, 2
Dana's Rep. 237. This decision is but an affirmation of the
doctrine laid down by Sergeant Williams in his note appen-
ded to the case of Welbrahan v. Snow, 2 Saund. Rep. 37–47,
P. who thus states the law. "If a woman has been guilty of
a conversion *before* her marriage, or a wife, without her hus-
band converts goods during coverture, this action (trover) lies
against husband and wife; in the former case, the declaration
must state the conversion *to be to her own use;* unless the sub-

ject matter is in existence, and the husband refuse to deliver it up on demand, in which case the course of precedents seems to warrant the laying of the conversion *to their own use;* and in the latter case, the *conversion* must be laid to the use of the husband only; however, if the conversion be the *joint act* of the husband and wife, it seems the action may be brought against the husband alone; for the conversion in such case is held in law to be the act of the husband only." He further proceeds to say, that the action is well brought against husband and wife charging a delivery to them and a conversion by *them* to the use of the husband, because a wife may be guilty of a conversion as well as of a trespass or disseizin, but not to her own use. From all which, it seems to me to result, that where the husband has been guilty of no tort, or wrongful detention, and is sought to be charged for the wrongful act of the wife, *solely* upon the ground of that unity which by legal fiction attaches to the marital relation, the action must be against husband and wife, and not against the husband alone. See McKown and wife v. Johnson, 1 McCord, 578; 2 Baily 411. If this principle be well founded; it results that as the demand existing against husband and wife cannot be set-off against a debt due from the husband alone, (Morris v. Booth and wife, 8 Ala. Rep. 908; 10 Bar. & Cres. 558,) the proof of the existence of such demand was irrelevant and should have been rejected by the Circuit Court. There is no defect of title in this case, as supposed by the counsel. The title was good it seems, and vested absolutely in the defendant. His possession has been disturbed by the trespass of the wife, for which he has his action for damages against husband and wife, but, as we have shown, not against the husband alone.

In respect to the last point raised by the counsel for the defendant in error, viz, that the contract was rescinded, we need only remark, that the record shows no rescision of this contract, and that the wife by her unauthorised act, done wholly without the privity of the husband, has no power to rescind his contracts, any more than she has to make contracts for him. See authorities refered to, 2 U. S. Digest, 500, B.

Whether, if the wife have possession of the slaves, and this note has been assigned without consideration, as is contended

by the counsel, the defendant has not a remedy in a court of equity, the said James B. Vaught being a non-resident and insolvent, is a question which we need not now decide.

Let the judgment be reversed, and the cause remanded.